UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                      :
FRANK MENLO,                                          :
                                   Plaintiff,         :
                                                      :
             -against-                                :
                                                      :         11 Civ. 1978 (JPO)
FRIENDS OF TZEIREI CHABAD IN ISRAEL,                  :
INC., also known as "Friends of Tzeirei Chabad",      :         MEMORANDUM AND
"Tzeirei Chabad of Israel", "Friends of Tzeirei       :              ORDER
Chabad in Israel", "Chabad Friends for Israel         :
Foundation", and "Friends of Tzeirei Chabad of        :
Israel, Inc.",                                        :
                                   Defendant.         :
                                                      :
--------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

On November 21, 2012, the Court issued an opinion granting summary judgment to

Plaintiff ("*Menlo II*").  Defendant has requested reconsideration of that ruling.  Plaintiff has filed

a motion to amend the judgment.  For the reasons that follow, Defendant's motion for

reconsideration is denied and Plaintiff's motion to amend the judgment is granted.

I.      **Motion for Reconsideration**

        A.      **Legal Standard**

        "A motion for reconsideration is an extraordinary remedy to be employed sparingly in the

interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol.*

*Group, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotation marks and citation omitted).

Accordingly, "[t]he threshold for prevailing on a motion for reconsideration is high." *Nakshin v.*

*Holder*, 360 F. App'x 192, 193 (2d Cir. 2010); *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255,

257 (2d Cir. 1995) ("The standard for granting such a motion is strict.").  "Generally, motions for

1

reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cioce v. County of Westchester*, 128 Fed. App'x 181, 185 (2d Cir.2005).

"[On a Local Rule 6.3 motion,] a party may not advance new facts, issues, or arguments, not previously presented to the Court." *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan.18, 2000); *accord Hayles v. Advanced Travel Mgmt. Corp.*, 01 Civ. 0017, 2004 WL 117597, at *1 (S.D.N.Y. Jan. 26, 2004) ("A movant may not . . . advance new facts, issues or arguments not previously presented to the Court, or reargue those issues already considered." (quotation marks omitted)). As Judge Sweet has observed, "Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temporaries, Inc.*, 99 Civ. 6098, 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001).

### B.    Application of Law to Facts

Defendant asks the Court to reconsider *Menlo II* on several grounds: (1) "an erroneous ruling of law as to the authenticity of plaintiff's Exhibit #4 (the purported Aharonov Letter)"; (2) "the necessity of additional testimony to establish the oral agreement precludes summary judgment" because "the *absence* of a *simultaneously executed promissory note* specifying the critical terms of the purported loan is fatal to a summary judgment disposition" (emphasis in original); and (3) inadequacy of the evidence in support of summary judgment.

All of these arguments were presented to and rejected by the Court in its earlier rulings in this case. It is, of course, well settled that motions for reconsideration are not meant to afford a

mere second bite at the proverbial apple. *See Norton v. Town of Islip*, No. 04 Civ. 3079, 2013 WL 84896, at *3 (E.D.N.Y. Jan. 7, 2013). For that reason alone, Defendant's motion fails.

In any event, these arguments do not succeed on the merits.

Defendant's insistence that the Court erred in refusing to strike the Aharonov Letter from the record was denied in the Court's first summary judgment ruling in this case. *See Menlo v. Friends of Tzeirei Chabad in Israel, Inc.*, No. 11 Civ. 1978, 2012 WL 137504, at *4 (S.D.N.Y. Jan. 17, 2012). The Court reaffirms that ruling and rejects Defendant's argument, which is meritless.

Defendant's next argument, that the absence of a simultaneously executed promissory note prevents summary judgment, relies on two entirely inapposite cases. The first case, *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77 (2d Cir. 2004), dealt with a suit by a shipper's subrogee under the Carmack Amendment against a carrier for theft of a shipment of cigarettes, which was transported from the United States and stolen shortly after being deposited in a bonded warehouse pending inspection and release by Canadian customs authorities. The plaintiff "sought to carry its burden of showing that there was no genuine issue of fact to be tried as to the contents and quality of the stolen cargo principally by proffering" a detailed bill of lading and an affidavit. *Id.* at 84. The Second Circuit ultimately found a genuine dispute of fact, since there was some evidence that the cargo had been sealed and "where the contents of a shipment are not visible or open for inspection . . . a clean bill of lading is not sufficient to establish delivery of the goods in good condition." *Id.* at 83. The second case, *Vacold LLC v. Cerami*, 545 F.3d 114 (2d Cir. 2008), affirmed a grant of summary judgment because it concluded that a "preliminary agreement" between the parties gave rise to binding obligations under New York law. *Id.* at 123-24. Neither of these cases could plausibly be said to

stand for Defendant's asserted proposition that a written agreement "is necessary to establish as a matter of law" that an enforceable oral contract existed between two parties.

Indeed, settled principles of contract law refute that proposition.  To start with the basic rule, to prevail on a summary judgment motion alleging breach of an contract, a plaintiff must establish that "any reasonable jury would . . . find all the necessary elements of a breach of contract claim . . . (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of contract by the defendant; and, (4) damages resulting from the breach." *Arias-Zeballos v. Tan*, No. 06 Civ. 1268, 2008 WL 833225, at *6 (S.D.N.Y. Mar. 28, 2008) (citation omitted).

Oral contracts that were not memorialized in a writing are no exception.  To the contrary, courts have repeatedly held that they may recognize the existence of binding obligations created by purely oral contracts when ruling on Rule 12(b)(6) and Rule 56 motions.  *See, e.g.*, *Probulk Carriers Ltd. v. Peraco Chartering USA LLC*, No. 11 Civ. 5686, 2012 WL 3095319, at *7 (S.D.N.Y. July 20, 2012); *Micromat Co., Inc. v. Catskill Mountain Brewing Co., Inc.*, No. 10 Civ. 508, 2012 WL 1898846, at *5 (N.D.N.Y. May 23, 2012); *Friedman v. Schwartz*, No. 08 Civ. 2801, 2011 WL 6329853, at *4 (E.D.N.Y. Dec. 16, 2011); *Dehua Lin v. Brennan*, No. 07 Civ. 1658, 2011 WL 5570779, at *5 (D. Conn. Nov. 15, 2011).  As the Second Circuit has explained, "[u]nder New York law, parties are free to enter into a binding contract without memorializing their agreement in a fully executed document . . . .  In any given case it is the intent of the parties that will determine the time of contract formation."  *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  Therefore, "[a]n oral agreement is 'binding except where the parties have explicitly made reference to an intention to be bound only by an executed written document.'"  *IBS Ketel, Ltd. v. Korea Telecom Am., Inc.*, No. 98 Civ.

4

4856, 2000 WL 821013, at *3 (S.D.N.Y. June 22, 2000) (quoting *DiMario v. Coppola*, 10 F.

Supp. 2d 213, 220 (E.D.N.Y. 1998)).  Intent is discerned from the totality of the circumstances.

*See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984).  For an oral

agreement to be enforced, it must be "sufficiently definite and explicit so [that the parties']

intention may be ascertained to a reasonable degree of certainty."  *Cleveland Wrecking Co. v.

Hercules Const. Corp.*, 23 F. Supp. 2d 287, 292 (E.D.N.Y. 1998), *aff'd sub nom. Cleveland

Wrecking Co. v. Hercules Const. Corp.*, 198 F.3d 233 (2d Cir. 1999) (quotation marks and

citations omitted).  "In the context of a contractual dispute, summary judgment may be granted

where the contract conveys a definite and precise meaning absent any ambiguity . . . ."  *Id.*

Oral contracts, however, are different in at least one salient respect: "Where an alleged

contract is oral, plaintiff has a particularly heavy burden to establish objective signs of the

parties' intent to be bound."  *Oscar Productions, Inc. v. Zacharius*, 893 F. Supp. 250, 255

(S.D.N.Y. 1995) (citation omitted).  "The burden is heavier in oral agreements because a primary

concern for courts in such disputes is to avoid trapping parties in surprise contractual obligations

that they never intended."  *Id.* (internal quotation marks and citations omitted).  Accordingly, to

prove the existence of an oral contract, there must be "overall agreement . . . to enter into a

binding contract."  *Id.* (quotation marks and citations omitted).

Applying these familiar rules of law in *Menlo II*, and looking to a complete evidentiary

record, the Court concluded that no reasonable juror could support Defendant's position at trial.

It is beyond cavil that the parties formed an oral contract with concrete and definite terms, that

Plaintiff performed the contract, that Defendant breached it, and that Plaintiff thereby sustained

damages.[1]  There is no evidence that the parties intended only to be bound by any writings that resulted from their discussions.  Nor has Defendant adduced any evidence that could reasonably explain the undisputed facts in a manner that does not result in contract liability.

Accordingly, as the Court explained after a careful survey of the evidence in *Menlo II*:

> Taking all of this material together, Defendant's theory is essentially that the picture the evidence paints—of a $950,000 loan, not a contribution—is actually the result of a complex set of coincidences, intentional falsehoods, and miscommunications between Defendant and its own agents.  This is the stuff of conjecture and speculation, not genuine factual dispute.  Presented with the evidence before this Court, no reasonable juror could find in Defendant's favor.

2012 WL 5927376, at *10.  The Court reaffirms that conclusion and thus rejects Defendant's third argument for reconsideration, which boils down to little more than an assertion that the Court improperly assessed the evidence in support of summary judgment.  Indeed, given that Defendant presented virtually no affirmative evidence for its position, but instead relied only on arguments presented by counsel, the case for summary judgment is particularly strong.

## II.    Motion to Amend the Judgment

Plaintiff has moved for an amendment to the judgment, which did not specify damages and did not address the matter of pre-judgment interest calculations.  As damages for the claims on which the Court granted summary judgment, Plaintiff is entitled to $950,000.

Plaintiff is also entitled to pre-judgment interest, an award governed by the applicable state law.  *See New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599,

---

[1] With respect to contract formation, to the extent the deal might be described as a "preliminary agreement," it was of a sort that the Second Circuit deems capable of creating binding obligations.  *See, e.g.*, *McElroy v. Gemark Alloy Ref. Corp.*, 592 F. Supp. 2d 508, 517 (S.D.N.Y. 2008) ("Type I preliminary agreements reflect a meeting of the minds on all the issues perceived to require negotiation, thereby binding both sides to their ultimate contractual objective.")

602-03 (2d Cir. 2003) ("With regard to preverdict interest determinations . . . New York law does not permit the trial court to exercise any discretion where a party is entitled to such interest as a matter of right . . . .  New York law provides that a 'prevailing party' is entitled to preverdict interest as a matter of right on most types of claims, including contract claims." (citations omitted)); *see also Cappiello v. ICD Publications*, 868 F. Supp. 2d 55, 59-60 (E.D.N.Y. 2012) ("The Second Circuit has expressly held that where, as here, the court's jurisdiction is premised on diversity, an award of pre-judgment interest is governed by state law, whereas an award of post-judgment interest is governed by 'the federal post-judgment interest rate provided for in 28 U.S.C. § 1961.'") (quoting *FCS Advisors, Inc. v. Fair Fin. Co., Inc.*, 605 F.3d 144, 147 (2d Cir. 2010)).  New York law provides that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ."  N.Y. C.P.L.R. § 5001(a) (McKinney 2007). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." *Id.* at § 5001(b).  This interest "shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  N.Y. C.P.L.R. § 5004 (McKinney).

Plaintiff argues that this award of interest should run from April 19, 2010 to November 21, 2012.  On April 19, 2010, Plaintiff transferred to Defendant the $950,000 at the heart of this case.  Defendant owed Menlo repayment by June 5, 2010.  When Defendant failed to repay those funds on June 5, 2010, Defendant breached the oral contract.  June 5, 2010 is thus the "earliest ascertainable date the cause of action existed" and the date that marks accrual of interest.  Thus, Plaintiff is entitled to $950,000, plus interest from June 5, 2010 to November 21, 2012.

**III.      Conclusion**

For the foregoing reasons, Defendant's motion for reconsideration is DENIED and

Plaintiff's motion to amend the judgment is GRANTED.  The Clerk of Court is directed to enter

judgment in favor of Plaintiff in the amount of $950,000 in damages, plus interest at a rate of 9%

from June 5, 2010 to November 21, 2012.

The Clerk of Court is directed to close the motions at Dkt. Nos. 63 and 67.

SO ORDERED.

Dated: New York, New York
          April 5, 2013

_____
                  J. PAUL OETKEN
               United States District Judge